UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-46

ACCREDITATION COMMISSION
FOR HEALTH CARE, INC.,

    Plaintiff,

v.

NextLOGiK, INC.

    Defendant.

**COMPLAINT**

## NATURE OF THE ACTION

1. This lawsuit is about the breach of a contract that the Plaintiff Accreditation Commission for Health Care, Inc. ("ACHC") entered with Defendant NextLOGiK, Inc. ("NEXTLOGIK"), for the development of software for ACHC.

2. ACHC entered a COMPWALK ENTERPRISE LICENSE AGREEMENT with NEXTLOGIK ("the **Contract**") on September 11, 2017.

3. In the Contract, NEXTLOGIK agreed to develop and subsequently support the operation of a web-based, mobile-ready system ("the **Software**"), to be customized for use by ACHC's employees, contractors and its end-user customers and which would support ACHC's operations and serve as a vital part of ACHC's entire enterprise.

4. The Contract called for NEXTLOGIK to use commercially reasonable efforts to complete the development of the Software by a date certain.[1]

5. As set forth in this Complaint, NEXTLOGIK has materially breached the Contract. NEXTLOGIK has failed to perform its duties in a professional and workmanlike manner in accordance with the requirements of the Contract. NEXTLOGIK has failed to provide software that is capable of performing the functions or producing the reports that ACHC requires, and has failed to timely acknowledge and address defects in the preliminary software modules that it did deliver.

6. NEXTLOGIK failed to timely address and correct the deficiencies in its contractual performance after receiving notice of the issues and an opportunity to cure. ACHC now seeks recovery of damages resulting from NEXTLOGIK's breach of contract and a declaration that ACHC properly terminated the Contract for material breach or, alternatively, with regard to the interpretation of certain provisions of the Contract.

**PARTIES AND JURISDICTION**

7. Plaintiff ACHC is a non-profit corporation which is exempt from taxation under Section 501(C)(3) of the United States Internal Revenue Code. ACHC is incorporated under the laws of the State of North Carolina with its principal office located at 139 Weston Oaks Court in Cary, North Carolina. ACHC provides accreditation services

---

[1] Due to a confidentiality provision in the Contract, ACHC has not attached a copy of the Contract to this Complaint and will be as circumspect as possible regarding the specific terms of the Contract while still presenting the gravamen of its claims.

for various types of companies across the United States which provide home health and other community-based services.

8. Defendant NEXTLOGIK is incorporated under the laws of the State of Maryland, with its principal office located at 7061 Deepage Drive, Suite 200, Columbia, Maryland. Upon information and belief, its principal business is offering the COMPWALK ENTERPRISE software and adapting it for use by its customers.

9. On information and belief, NEXTLOGIK was formed as a for-profit affiliate or subsidiary of COLA, Inc. ('COLA"), an organization offering accreditation services for various clinical laboratories in hospitals and other health care organizations, which also is organized under the laws of the State of Maryland and has its principal office in Columbia, Maryland.

10. On information and belief, COLA originally developed the COMPWALK ENTERPRISE software for its own accreditation operations, and at some point in the past realized that its system could be used by other organizations, including accreditation organizations like ACHC; and so COLA formed NEXTLOGIK to engage in that business.

11. The Court has jurisdiction over the subject-matter of this action under 28 U.S.C. § 1332, because there is complete diversity between the Parties. ACHC is a North Carolina Non-profit Corporation with its principal office in North Carolina. NEXTLOGIK is a Maryland business corporation with its principal office in Maryland. The amount in controversy exceeds $75,000.00.

12. The final execution of the contract occurred in North Carolina when the Vice-President of ACHC signed the contract on September 11, 2017.

13. A substantial part of the activity relating to the Contract occurred in this judicial district. NEXTLOGIK employees travelled to Cary, North Carolina during the course of negotiation of the Contract to persuade ACHC to enter into the Contract. During the course of NextLOGiK's work on the Contract, its employees traveled to North Carolina on multiple occasions to meet with ACHC's Project Staff about the development of the Software; and its employees also communicated on a regular basis with representatives of ACHC to receive information about how to structure the software based on information provided by ACHC employees working at ACHC's office. NEXTLOGIK delivered materials to ACHC via electronic communications for its review testing and approval, and otherwise purposefully availed itself of the benefits of doing business in North Carolina.

14. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of North Carolina.

**FACTS**

15. ACHC has received "Deemed Status" recognition for a number of its accreditation programs, which means that when an organization achieves accreditation through ACHC, the organization is deemed to be in full compliance with requirements established for those programs by the Centers for Medicare and Medicaid Services in the

U.S. Department of Health and Human Services; and therefore, the organization may receive Medicare reimbursement for the services provided to its patients.

16. ACHC's accreditation process involves a rigorous examination and analysis of whether, and how well, an applicant organization meets a detailed set of accreditation standards which address, any applicable requirements issued by the Centers for Medicare and Medicaid Services for the services under review, and which span all aspects of an organization's operations. ACHC's accreditation process entails the submission and review of an application by the organization seeking accreditation, as well as its policies and procedures for the services under review, followed by an on-site visit to the organization by an accreditation surveyor. The on-site visit may last one to three days, depending on the nature of the organization and the services under review.

17. Since much of the examination and review of the operations of applicant organizations is conducted by surveyors working at the applicant organizations' locations, it is essential that ACHC provide them access to a mobile software platform to which they can upload data from the field to support their work.

18. ACHC also needs software that can be used by customer organizations applying for accreditation, to upload their accreditation applications and other data for analysis by ACHC.

19. Many of ACHC's customers have and are expected to continue to seek accreditation for more than one type of health care services, and so ACHC needs functional

software that would permit a customer to complete an online application for accreditation of two or more services.

20. Some of ACHC's customers offer the services for which they seek accreditation from a large number of locations across the United States and so ACHC needs functional software to accommodate these types of "corporate" customers.

21. ACHC entered the Contract with NEXTLOGIK to address these and other critical business goals and to obtain software that would support its complex and diverse operations.

22. On information and belief, the Contract followed a standard form and format established by NL.

23. The Contract became effective on September 11, 2017, when it was executed by ACHC's Vice-President at its Cary site.

24. The Parties to the Contract worked through a collaborative effort, with ACHC employees at its Cary, North Carolina offices providing detailed inputs to NEXTLOGIK about ACHC's operating procedures. There were numerous in-person meetings at ACHC's Cary offices, often lasting more than one day. There also were weekly telephone calls between NEXTLOGIK employees and ACHC employees in Cary to discuss progress on the Contract; and ACHC employees located at its business site in Cary reviewed and conducted testing of the operation of those few components of the Software that were produced by NL.

25. The Parties agreed that NEXTLOGIK would perform all its services (a) in a professional and workmanlike manner (b) in accordance with industry standards and practices for similar services, (c) would use personnel with the requisite skill, experience and qualifications, and (d) would devote adequate resources to meet its obligations under this Agreement.

26. The Parties agreed that the Software was to be developed for use by ACHC's employees, contracted surveyors and consultants working on behalf of ACHC, and end user customers of ACHC.

27. During their interactions in the course of the collaborative work on the Contract, ACHC personnel clearly identified a number of critical functional components to be included in the Software, including a module to produce a large number of Reports routinely used by ACHC, a feature that allows its customers to apply for accreditation of multiple services with a single accreditation application, and components that address the specific needs of ACHC's corporate customers, which operate from multiple locations, in multiple states across the United States.

28. NEXTLOGIK sent a Project Management Plan to ACHC on or about December 7, 2017. On page 10 of the Project Management Plan NEXTLOGIK stated that by February 15, 2019, it would "Demonstrate completed product iteratively and hand off for final user acceptance testing; "and that by March 11, 2019, there would be a "Complete systems and documentation transitioned to ACHC for management/administration of new platform [the Software]."

29. Thus, in its December 7, 2017 Project Management Plan, NextLOGiK promised to have the Software complete and ready for use by all Permitted Users by no later than March 11, 2019.

30. Subsequently, in an exchange of email messages, ACHC agreed to extend the target date to May 11, 2019, to allow more time to integrate ACHC's customer management software.

31. In July of 2019, the Software still was not complete. On July 19, 2019, NEXTLOGIK provided a revised project schedule to ACHC as part of a slide presentation which showed a phased release of components of the Software for functional testing over the following three to six months, to be followed by a controlled, phased transition of ACHC's customers to the new Software.

32. This information was presented to ACHC's Board of Directors at a Board meeting, but subsequently, NextLOGiK announced that all testing of the Software would be suspended for the months of November and December, which necessarily would entail further delays in development of the Software.

33. By the time of NEXTLOGIK's announcement of the suspension of testing of modules of the Software, ACHC had learned of substantial changes in the leadership structure of NEXTLOGIK and NEXTLOGIK's Project Team. The changes at NEXTLOGIK resulted in additional concerns for ACHC in regard to NEXTLOGIK's ability to perform the Contract.

34. As a result of NextLOGiK's delays, and in response to its announcement of the suspension of testing, on November 22, 2019, ACHC sent a letter to NEXTLOGIK requesting its attention to a number of deficiencies in its performance under the Contract. The parties subsequently discussed the issues raised by ACHC during a telephone conference between representatives of ACHC and NEXTLOGIK that took place on December 2, 2019.

35. In response to ACHC's letter of November 22, 2019 and the subsequent telephone call, on December 11, 2019, NEXTLOGIK provided a document called "Revised Milestone Dates and Plan" that, among other things, identified specific modules or processes that it was engaged in developing for ACHC as the component parts of the Software.

36. In its December 11, 2019 Revised Milestone Dates and Plan, NEXTLOGIK projected that it would have "the first 10 important reports that ACHC needs immediately upon launch,' in effect asserting that the ability to run only 10 reports was all that would be needed by ACHC to launch a test of the Software, using actual customers. The document does not even identify which 10 reports are being referenced. But in fact, to launch testing with actual customers, ACHC would need the ability to generate 69 different reports through the Software.

37. The Revised Milestone Dates and Plan sent by NEXTLOGIK on December 11, 2019 identified the status of a number of components of the Software as "Not Started."

38. The Revised Milestone Dates and Plan sent by NEXTLOGIK on December 11, 2019 did not present any indication when or if the functionality needed by ACHC for its corporate multi-site customers, or for customers applying for multiple accreditation programs, would be produced.

39. After analysis of the Revised Milestone Dates and Plan sent by NEXTLOGIK on December 11, ACHC determined that the response provided by NEXTLOGIK was wholly inadequate and that through its ongoing performance failures and delays, NEXTLOGIK had breached material terms of the Contract. Accordingly, ACHC sent a Notice of Breach to NEXTLOGIK on December 27, 2019, under Section 6.4.3 of the Contract, giving NEXTLOGIK 30 days to cure the breach, until January 27, 2020.

40. In its letter of December 27, 2019, ACHC identified a number of ways in which NEXTLOGIK had breached the contract. Among other things, the letter explained: (a) that NEXTLOGIK had failed to deliver initial versions for preliminary testing of the majority of the anticipated modules of the Software; (b) that NEXTLOGIK had failed to produce even preliminary versions of the Software capable of producing the reports specified in ACHC's prior communications; (c) that NEXTLOGIK had failed to timely deliver Software that satisfied the functional specifications set forth by ACHC; and (d) that NEXTLOGIK had failed to acknowledge and address in a timely manner issues and bugs that ACHC entered into NEXTLOGIK's ticket system with regard to the few modules of the Software that NEXTLOGIK did deliver.

41. NL failed to cure its material breach of the Contract on or before January 27, 2020. ACHC therefore terminated the Contract by letter dated February 6, 2020.

42. ACHC has paid NEXTLOGIK the full development fee of $650,000.00 that is stated in the Contract, as well as some $18,000.00 in NEXTLOGIK expenses, including travel expenses of NEXTLOGIK employees coming to ACHC's Cary site for meetings. ACHC also has paid NEXTLOGIK $40,625.00 of license fees for use of the Software under the Contract, even though the Software is not yet "ready for use by ACHC and its Permitted Users," some seven months after the June, 2019 deadline in the Contract.

43. ACHC has materially performed all of its obligations under the Contract.

44. The Contract includes a purported "Non-Solicitation" provision in Section 11.1 (the "Non-Solicitation Provision).

45. The Non-Solicitation Provision purports to restrain the parties from offering to employ, contract with or otherwise solicit for contract work or employment persons who are employees of the other party at the time of the offer or solicitation. It does not apply to persons who were at some previous time employed by a party if the employment relationship had ended before the offer or solicitation was made.

46. Through this lawsuit, ACHC seeks to recover all sums paid to NEXTLOGIK to date, as well as a declaration that the Contract was properly terminated by ACHC for material breach as set forth herein and therefore any obligation of ACHC under the Non-Solicitation Provision was extinguished.

47. In the alternative, in the event the Court determines that the Contract was not terminated for material breach, ACHC seeks a declaration that the Non-Solicitation Provision does not preclude ACHC from soliciting or offering to employ persons who were employees of NEXTLOGIK at some previous time provided the employment relationship had ended before any offer or solicitation was made.

## COUNT 1
### Breach of Contract and Express Warranties

48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

49. NEXTLOGIK has materially breached the Contract and failed to perform its services under the Contract in a professional and workmanlike manner in accordance with commercially reasonable industry standards for similar services, using personnel with the requisite skill, experience and qualifications, and failed to devote adequate resources to meet its obligations under the Contract.

50. NEXTLOGIK failed to timely deliver Software and integrations of the Software with third party applications that function materially in accordance with the specifications set forth in the statement of work developed by the parties or the documentation for the Software.

51. ACHC gave timely notice to NEXTLOGIK of its material breaches and NEXTLOGIK failed to cure the breaches within the contractually designated cure period.

52. ACHC has suffered damages as a proximate and foreseeable result of the breaches of contract by NEXTLOGIK. Among other things, ACHC has suffered the loss

of amounts paid to NEXTLOGIK in excess of $700,000 for the development and licensing of the Software, which ACHC is not able to use, and ACHC has lost the benefit of its contractual bargain that it would receive functional software that satisfied ACHC's stated needs and could be operated in a live environment on or before June of 2019 in exchange for payment of the consideration set forth in the Contract.

53. ACHC has satisfied all conditions precedent to its right to recover damages arising from the breach of contract by NEXTLOGIK.

## COUNT 2

### Declaratory Judgment

54. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

55. There is an active dispute between the parties with respect to the question of whether there was a material breach of the Contract by NEXTLOGIK and with respect to the interpretation of the Non-Solicitation Provision, Section 11.1 of the Contract. ACHC has asserted that NEXTLOGIK committed a material breach of the Contract and failed to cure the breach within the required time period, and NEXTLOGIK has asserted that its actions do not constitute a material breach. In addition, ACHC asserts that the Non-Solicitation Provision does not apply to actions directed towards a former employee of a party, while NEXTLOGIK has asserted that the Non-Solicitation Provision applies to certain former employees. There is a justiciable controversy because there is a reasonable apprehension of litigation over these issues.

56. Plaintiff requests a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the Contract was properly terminated by ACHC on February 6, 2020 as a result of the material breach of the Contract by NEXTLOGIK, and that all duties and obligations of ACHC, including but not limited to any obligation to provide payment to NEXTLOGIK or to comply with the Non-Solicitation Provision, are fully and completely excused as of that date.

57. Alternatively, in the event the Court determines that there was no material breach of the Contract by NEXTLOGIK, Plaintiff requests a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the Non-Solicitation Provision in the Contract does not apply to actions directed towards a former employee of a party to the Contract.

## DEMAND FOR JURY TRIAL

58. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) award compensatory damages to Plaintiff in an amount in excess of $700,000 to be proven at trial that proximately result from Defendant's material breach of the Contract;

(2) issue a declaratory judgment that the Contract was properly terminated by ACHC on January 29, 2020 as a result of the material breach of the Contract by NEXTLOGIK, and that any duty of ACHC to make payment to NEXTLOGIK or comply

with the Non-Solicitation Provision of the Contract is fully and completely excused as of that date, or, in the alternative, in the event the Court does not determine that there was a material breach of the Contract by NEXTLOGIK, issue a declaratory judgment that the Non-Solicitation Provision in the Contract does not apply to actions directed towards a former employee of a party to the Contract;

    (3)    award Plaintiff its costs of bringing this action; and

    (4)    grant such further relief as appears to this Court to be equitable and just.

Respectfully submitted the 6th day of February, 2020.

**POYNER SPRUILL LLP**

By: s/ Eric P. Stevens
Eric P. Stevens
N.C. State Bar No. 17609
estevens@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: 919.783.1017
Facsimile: 919.783.1075

**COUNSEL FOR PLAINTIFF**