UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLNIA
WESTERN DIVISION
Case No. 5:20-CV-46-M

ACCREDITATION COMMISSION FOR
HEALTH CARE, INC.,

               Plaintiff,

v.

NEXTLOGIK, INC.,

               Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant NextLOGiK, Inc.'s "Motion to Dismiss or, in the alternative, Motion to Transfer Venue." [DE-31 (the "Motion").] Defendant invokes *forum non conveniens*, Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and 28 U.S.C. § 1404(a) in support of its Motion, arguing that venue is proper and more convenient in the United States District Court for the District of Maryland and dismissal or transfer is warranted. For the reasons set forth below, dismissal is not warranted and the Court, in its discretion, declines to transfer the case to the District of Maryland. The Motion is DENIED.

    I.    Factual Background

The facts alleged in the pleadings and the parties' declarations may be summarized as follows. [*See* DE-19 ("Amended Complaint" or "AC"); DE-32-2 (Def.'s Dec. of Ed Mooers); DE-50 (Pl.'s Dec. of Jillian Piccicuto); DE-51 (Pl.'s Dec. of Jose Domingos); DE-52 (Pl.'s Dec. of Robert Gardner).][1]

---

[1] The Court may consider evidence outside the pleadings when considering the instant Motion. *See, e.g.*, *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) ("On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." (citation omitted)); *Mitchell v. Norfolk S. Ry. Co.*, No. 2:15CV00002, 2015 WL 5285827, at *1

Plaintiff Accreditation Commission for Health Care, Inc. ("ACHC" or "Plaintiff") is a non-profit accreditation service provider incorporated under the laws of North Carolina with its principal office located in Cary, North Carolina. [AC ¶ 8.] Defendant NextLOGiK, Inc. ("NextLOGiK" or "Defendant") is a software-technology company incorporated in Maryland with its principal office in Columbia, Maryland. [AC ¶ 9; DE-32 at 2.] In September 2017, Plaintiff contracted with Defendant to develop, provide, and service a customized management software system to support Plaintiff's accreditation and business operations, including in this District. [AC ¶ 2; DE-49 at 13.]

### A. Requests for Proposal and Contract Execution

In early 2017, Plaintiff issued a request for proposals ("RFP"), seeking vendors which could develop new management software for its business. [AC ¶ 21.] Defendant responded, and on or about April 24, 2017, representatives of NextLOGiK traveled to ACHC's Cary offices to discuss the RFP. [AC ¶ 22-23.] In May 2017, Plaintiff selected Defendant as the 'winner' of the RFP process. [AC ¶ 26.] Thereafter, the parties negotiated a contract; NextLOGiK's then-CEO signed the contract on September 5, 2017, and Plaintiff's then-Vice President of Finance and Operations executed the contract from Plaintiff's Cary offices on September 11, 2017. [AC ¶¶ 26-27.] The contract included a provision whereby the parties agreed that any dispute involving the contract "be governed by and construed in accordance with the laws of the State of Maryland." [DE-32 at 5; DE-32-1 at § 11.6.]

---

n.2 (W.D. Va. Sept. 8, 2015) ("When reviewing a motion to transfer under § 1404(a), the court may consider evidence outside the pleadings.").

B.  Performance of the Contract

The contract described a cooperative development process and provided that the parties would meet and discuss Plaintiff's needs so that Defendant could develop an effective software tailored to Plaintiff's business operations.  [AC ¶ 31.]  The parties agreed that Plaintiff could use the software and that Defendant would support Plaintiff's use thereof for a term of eight years, with three one-year renewal options.  [AC ¶¶ 29, 35.]

Between October 2017 and October 2019, representatives of NextLOGiK visited ACHC's Cary offices approximately ten times to meet with Plaintiff's representatives and perform work on the contact, and ACHC visited NextLOGiK's Maryland offices once.  [DE-49 at 6-7; DE-50; DE-52.]  Plaintiff estimates that its employees, based in Cary, North Carolina, spent approximately 2,000 hours working on the contract between September 2017 and February 2020.  [DE-49 at 6; DE-50 ¶ 12.]  Defendant states that its portion of the contract performance and software development occurred at its Maryland offices, and that the software was stored on servers in Baltimore, Maryland.  [DE-32 at 3-4.]

Plaintiff alleges that Defendant missed a series of performance deadlines and provided an incomplete and unsatisfactory software product.  On December 27, 2019, Plaintiff sent Defendant a Notice of Breach, describing Defendant's alleged material breaches and giving Defendant thirty days to cure the same.  [AC ¶ 109-10.]  Defendant allegedly failed to cure the noted breaches within the thirty-day period, and Plaintiff initiated this action on February 6, 2020.  [AC ¶ 111.]

II.    Motion to Dismiss

In the portion of Defendant's Motion seeking dismissal, Defendant cites *forum non conveniens*, Federal Rule of Civil Procedure 12(b)(3), and 28 U.S.C. § 1406(a).  The Court addresses each in turn.

3

### A. *Forum Non Conveniens*

Defendant first cites the general proposition that "[t]he doctrine of forum non conveniens permits a court to dismiss an action over which it has jurisdiction when there is an adequate alternative forum in which the case can be more conveniently heard," and argues that the federal district court in Maryland is a more convenient alternative forum. [DE-32 at 7.]

But, the doctrine of *forum non conveniens* does not apply where, like here, a party seeks to transfer a case from one federal district court to another federal district court. "The common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (brackets in original) (citations and internal quotation marks omitted); *see also Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) ("Today, the doctrine applies in the federal courts only when the other jurisdiction is a foreign one." (footnote omitted)). Defendant's Motion does not refer to any state or foreign forum; instead, Defendant refers only to transfer to the United States District Court for the District of Maryland, and the Court declines to read any other request into the Motion. [*See, e.g.*, DE-32 at 1 ("to the United States District Court for the District of Maryland, Northern Division"), 7 ("transfer to the United States District Court for the District of Maryland"), 9 ("justify transfer to the District of Maryland"), 11 ("District of Maryland").] Instead, transfers between two federal courts are accomplished through the federal transfer statute, 28 U.S.C § 1404, which Defendant also invokes here. *See Sinochem Int'l Co.*, 549 U.S. at 430 ("For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." (citing 28 U.S.C. § 1404(a)). Defendant's attempt to seek this relief through *forum non conveniens* is denied as improper.

4

B.  Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a)

Defendant next invokes Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), arguing that venue is proper in the District of Maryland and that the Court should transfer the matter under § 1406(a) because the location of key witnesses and evidence "constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district."  [DE-32 at 8 (citing *Porter v. Groat*, 840 F.2d 255, 257-58 (4th Cir. 1988)); *see also id.* at 11.]

1.  Legal Standard

Discussion of Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), however, is incomplete without reference to the applicable venue statute, here, 28 U.S.C. § 1391(b), the general federal venue statute.[2]  These provisions provide a tripartite framework through which courts may determine whether venue is wrong or improper and whether dismissal or transfer is required. First, Fed. R. Civ. P. 12(b)(3) permits a litigant to move for dismissal when venue is "improper"; second, and similarly, § 1406(a) states that where "venue [is] in the wrong division or district" the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"; finally, § 1391(b), the general federal venue statute, establishes where venue is proper.  In other words, Rule 12(b)(3) and § 1406(a) provide for the dismissal or transfer of an action when venue is "wrong," see § 1406(a), or "improper," see Rule 12(b)(3), and whether venue is wrong or improper is determined by the applicable federal venue statute, here, § 1391(b).

---

[2] "Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply. Cf., *e.g.*, § 1400 (identifying proper venue for copyright and patent suits)."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 n.2 (2013).

The Supreme Court, in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, described this framework:

> Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . . This question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391. . . . When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

571 U.S. 49, 55 (2013) (footnotes omitted). Where the requirements of the federal venue statute, § 1391(b), are satisfied, dismissal pursuant to Rule 12(b)(3) and § 1406(a) is not warranted; if, instead, the venue requirements are not met, transfer or dismissal is required. *See, e.g.*, *WCC Cable, Inc. v. G4S Tech. LLC*, No. 5:17-CV-00052, 2017 WL 6503142, at \*5 (W.D. Va. Dec. 15, 2017) ("A court may only invoke Section 1406(a) when venue is 'wrong' under Section 1391(b)—that is, a district other than those districts in which Congress has provided by its venue statutes that the action may be brought." (citing *Atl. Marine*, 571 U.S. at 58) (internal quotation marks omitted)); *S. Coal Corp. v. IEG PTY, Ltd.*, No. 2:14CV617, 2016 WL 8735622, at \*2 (E.D. Va. Feb. 26, 2016) ("According to the Supreme Court, the proper analysis to when venue is challenged for dismissal is to look only to whether the case falls within one of the categories of § 1391(b) only." (citing *Atl. Marine.*, 571 U.S. at 55-56)). § 1391(b), in turn, provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in

6

which any defendant is subject to the court's personal jurisdiction with respect to such action.

"In [the Fourth] [C]ircuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." *SAMi-Systematic Analysis Mgmt., Inc. v. Omnivere Acquisitions, LLC*, No. CV RDB-19-2904, 2020 WL 1863292, at *2 (D. Md. Apr. 14, 2020) (citation and internal quotation marks omitted). "Like a motion to dismiss . . . in deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." *Id.* (citation and internal quotation marks omitted). "A plaintiff need only make a prima facie showing of proper venue in order to defeat a motion to dismiss." *ARCpoint Fin. Grp., LLC v. Blue Eyed Bull Inv. Corp.*, No. 6:18-CV-00235-AMQ, 2018 WL 2971205, at *2 (D.S.C. June 13, 2018) (citation omitted); *see also Roy v. Home Depot, U.S.A., Inc.*, No. 7:17-CV-239-BO, 2018 WL 6588514, at *2 (E.D.N.C. July 20, 2018) ("plaintiff must make a prima facie showing of jurisdictional basis" (citation omitted)).

## 2. Analysis

Plaintiff asserts that it has carried its burden at this stage because (1) pursuant to § 1391(b)(2), a substantial part of the events occurred in this District and (2) pursuant to § 1391(b)(1), Defendant is a resident of this judicial district, and venue is, therefore, proper. [DE-49 at 9.] Defendant does not address whether venue is improper in this District, but, instead, simply argues that venue is also proper in the District of Maryland.

Plaintiff argues that a substantial part of the events occurred in this district, and the Court agrees. In determining where substantial events or omissions occurred, "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d

7

402, 405 (4th Cir. 2004) (citations omitted). Here, Plaintiff states that its only offices are in this District, that the RFPs were drafted in this District, that Defendant visited the District to solicit the contract, that the operative contract was executed in this District, that Plaintiff's employees spent thousands of hours in this District working on tasks related to the contract, that Defendant's representatives visited Plaintiff's Cary offices eleven times pursuant to the contract, that the software at issue was to be used by Plaintiff to manage its operations in this District, and that the parties contemplated that Defendant would provide ongoing support to Plaintiff in this District. This is a sufficient prima facie showing to establish proper venue and defeat the motion to dismiss. *Cf. AC Controls Co., Inc. v. Pomeroy Computer Res., Inc.*, 284 F. Supp. 2d 357, 358-59 (W.D.N.C. 2003) (holding a "substantial part of the events giving rise to this dispute occurred in Charlotte, North Carolina" where "Plaintiff . . . a North Carolina corporation, placed an order . . . to purchase an eBusiness Suite of software from Defendant" and an additional defendant was hired to "provide [plaintiff] with consulting services to implement the software"); *Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998) (finding venue was proper where "[t]he license agreements in question took effect upon their acceptance and execution by Hardee's in North Carolina. The omissions which are the focus of this case are Defendants' alleged failures to pay certain fees into Hardee's Treasury Department in Rocky Mount, North Carolina."). Defendant has provided no argument to the contrary. Because Plaintiff has satisfied its burden of establishing venue under § 1391(b)(2), the Court need not address Plaintiff's arguments concerning § 1391(b)(1).[3]

---

[3] Were this Court to consider whether venue has also been established under § 1391(b)(1) because Defendant is a resident of this District, it would also likely find venue proper. Under § 1391(b)(1), a corporate defendant is "deemed to reside" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(b)(1), (c)(2); *see also Roy*, 2018 WL 6588514, at *1. Here, Defendant

Instead, Defendant argues that "[a]ssuming, *arguendo*, venue is proper, the Fourth Circuit has held that transfers can be made pursuant to 28 U.S.C. § 1406(a)" when there is "an impediment to a decision on the merits in the transferor district but [] not . . . in the transferee district." [DE-32 at 8 (citing *Porter*, 840 F.2d at 257-58).] In *Porter v. Groat*, the Fourth Circuit interpreted the text of § 1406(a)—"wrong division or district"—broadly and held that, even where venue is otherwise proper, "§ 1406(a) [] authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." 840 F.2d at 258 (emphasis added); *see also Taylor v. City & Cty. of Honolulu*, No. 7:16-CV-410-D, 2017 WL 3526660, at *4 (E.D.N.C. Aug. 16, 2017) ("Even if venue is proper in the transferor court, transfer may be made under section 1406(a) for any reason which constitutes an impediment to a decision on the merits." (citing, *inter alia*, *Porter*, 840 F.2d at 257-58)).

---

appears to have waived any objection to personal jurisdiction by failing to raise it in the instant Motion. *See Safety Equip. Inst. v. Signature Lacrosse, LLC*, 438 F. Supp. 3d 685, 688 (E.D. Va. 2020) ("a defendant may not rely on an objection to improper venue under Rule 12(b)(3) to advance and thereby preserve an objection to personal jurisdiction under Rule 12(b)(2)"); *ABC Phones of N. Carolina, Inc. v. Yahyavi*, No. 5:20-CV-0090-BR, 2020 WL 4208923, at *2 (E.D.N.C. July 22, 2020) ("A party waives its personal jurisdiction defense if it does not raise it at the time it files a Rule 12 motion or an answer, whichever is first." ). Because Defendant has apparently waived its defense of personal jurisdiction, the Defendant has consequently "ipso factor consented to venue under [§ 1391(b)(1)]. It is, after all, 'subject to personal jurisdiction with respect to the civil action in question.'" 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3811.1 (4th ed.) (footnote omitted); *see also Duke Energy Indus. Sales, LLC v. Massey Coal Sales Co.*, No. 5:11-CV-00092, 2011 WL 4744907, at *2 (S.D.W. Va. Oct. 7, 2011) (finding that where defendant waived defense of personal jurisdiction, venue was also proper under § 1391(b)(1)); *Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 960 (D.S.D. 2016) (same); *but see Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-CV-2162 (MKB), 2016 WL 8711210, at *2-3 (E.D.N.Y. Jan. 22, 2016) (declining to find venue proper under § 1391(b)(1) where defendant had waived defense of personal jurisdiction).

Defendant cites *Porter* and argues that "[t]he location of key witnesses" and evidence in the District of Maryland constitute such an impediment. [DE-32 at 8.] However, the sort of "impediment[s] to a decision on the merits" *Porter* implicates—including statute of limitations issues, *Porter*, 840 F.2d at 258, or lack of personal jurisdiction, *Binks v. Collier*, No. DKC 19-0732, 2020 WL 4333862, at *3 (D. Md. Jan. 28, 2020)—are not present here. Rather, Defendant cites purported difficulties based on the location of evidence and witnesses, a consideration more properly before the Court in a motion to transfer venue under the federal transfer statute, § 1404(a). *See* § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . .").

III.     Motion to Transfer

The crux of Defendant's Motion is that the Court, in its discretion, should transfer the case to the District of Maryland pursuant to 28 U.S.C. § 1404(a). [DE-32 at 12-27.] Because the transfer would, at most, "simply shift the inconvenience from one party to another," the motion to transfer is denied. *See Elec. Sys. Prot., Inc. v. Innovolt, Inc.*, No. 5:09-CV-464-FL, 2010 WL 2813503, at *2 (E.D.N.C. July 14, 2010) (citation omitted).

A.  Legal Standard

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a). District courts in the Fourth Circuit consider four factors when deciding whether a change of venue is warranted: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of

10

justice." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "As a court considers such factors, it is mindful that the ultimate decision of whether transfer is appropriate is not reached by cataloguing the weighted result of each factor, but rather is within the 'art of judging.'" *Golden Corral Franchising Sys., Inc. v. GC of Vineland, LLC*, No. 5:19-CV-255-BO, 2020 WL 1312863, at *2 (E.D.N.C. Mar. 17, 2020) (citation omitted).

### B. Analysis

Defendant has raised serious arguments in favor of transfer, but, in light of the weight accorded to Plaintiff's choice of forum, the Court finds that the case should be retained in this District.

#### 1. Plaintiff's Choice of Forum

"[T]here is ordinarily a strong presumption in favor of plaintiff's choice of forum." *Bourne v. McNealy-Minor*, No. 7:19-CV-236-FL, 2020 WL 1491549, at *5 (E.D.N.C. Mar. 27, 2020) (citations and internal quotation mark omitted). "A 'plaintiff's choice of forum is often the most important factor in a transfer of venue analysis.'" *Hunter v. Mountain Commerce Bank*, No. 1:15cv1050, 2016 WL 5415761, at *11 (M.D.N.C. Sept. 28, 2016) (citation omitted).

Defendant argues that Plaintiff should not be afforded the strong presumption in favor of its choice of forum because this District has "little connection with the operative facts of the lawsuit" and Maryland "has a stronger relationship to the dispute or operative facts." [DE-32 at 14 (citations omitted).] But, the facts alleged are as significantly connected to the District of Maryland as they are to the Eastern District of North Carolina: Defendant's main office is located in Maryland—Plaintiff's is located in Cary, North Carolina; Defendant developed the software predominantly in Maryland—Plaintiff dedicated over 2,000 hours of employee time to

11

tasks in connection with the contract in this District; Defendant's representatives visited Plaintiff's office in Cary eleven times, including the initial solicitation meeting—Plaintiff's representatives visited Defendant's office in Maryland once; and the ultimate goal of the project was the production of a custom software for use in this District. "[T]he plaintiff's initial choice of forum is entitled to deference and 'should rarely be disturbed.'" *WPB Partners, LLC v. Old Republic Nat. Title Ins. Co.*, No. 5:12-CV-132-F, 2013 WL 395112, at \*4 (E.D.N.C. Jan. 31, 2013) (citations omitted); *see also Longo v. Trojan Horse Ltd.*, 992 F. Supp. 2d 612, 619 (E.D.N.C. 2014) ("The Court is also mindful that 'a plaintiff's choice of forum is a paramount consideration . . . that . . . should not be lightly disturbed.'" (citation omitted)). Defendant has provided no compelling reason to retreat from that deference.

> 2. Witness Convenience and Access and Convenience of the Parties

The Court jointly addresses witness convenience and access and the convenience of the parties and finds that they are neutral considerations here. Defendant argues these interests would be served by transfer because Defendant intends to rely on non-party witnesses based in Maryland that are beyond this Court's subpoena power, its party witnesses all reside in Maryland, and key documentary evidence is in Maryland. [DE-32 at 15-19.]

First, a barebone assertion that Defendant has non-party witnesses present in Maryland does not support transfer. Instead, Defendant must identify the specific non-party witnesses, "demonstrate 'whether th[ose] witness[es] [are] willing to travel to a foreign jurisdiction,'" *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005) (citation omitted), and proffer details concerning the materiality of any non-party testimony, *Elec. Sys. Prot., Inc.*, 2010 WL 2813503, at \*2 ("The lack of such a proffer makes a comparison of 'key

witnesses' residing in the different forums difficult" (citations omitted)). *See also Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19CV486, 2020 WL 2086188, at *19 (M.D.N.C. Apr. 30, 2020) ("To carry its burden the moving party must demonstrate whether its witnesses are willing to travel to a foreign jurisdiction. . . . Though Defendants contend, not unreasonably, that more witnesses are located in Georgia, they do not offer the court a specific example of any Georgia witness who is unwilling to travel to North Carolina. The [] factor, therefore, weighs in favor of denying the motion." (citation and internal quotation marks omitted)). Defendant has generally identified the non-party witnesses as "former employee[s]" who may "address a variety of issues, including allegations that the additional work" was necessary [DE-32 at 4, 17], but Defendant does not indicate whether those witnesses would be unwilling to appear voluntarily in this District [DE-32 at 16-17] nor does Defendant discuss the materiality of any specific testimony, particularly in light of the fact that Defendant's current employees who worked on the software at issue could presumably testify to the same facts concerning its development [DE-32-2 ¶ 23 ("The substantial majority of the Software Product design and licensing team was composed of approximately sixteen (16) NextLOGiK full-time employees . . . . *some of whom* are former employees" (emphasis added))]. Given the limited extent of Defendant's showing, the presence of non-party witnesses in Maryland does not tip the scale in favor of transfer.

Second, concerning party witnesses and the convenience of the parties, while Defendant is certainly correct that transfer to the District of Maryland would be more convenient for it and its own party witnesses, it would be equally inconvenient for Plaintiff and Plaintiff's party witnesses, all of whom work or reside in this District. [DE-49 at 8 ("All of ACHC's key party witnesses work at its offices in this District.")]; *see Nuvotronics, LLC v. Luxtera, Inc.*, No.

13

7:13CV00478, 2014 WL 1329445, at *5 (W.D. Va. Apr. 2, 2014) (declining to transfer under §
1404(a) and finding that, absent more, transfer would "merely shift[] the balance of
inconvenience to the plaintiff" where one defendant had its "headquarters, operations, and
employees" and the other defendant had "a satellite office" and a "sales office" in the proposed
transferee district, but plaintiff's "principal place of business and relevant records" were in the
Western District of Virginia).

Finally, Defendant argues that all of the key documentary evidence, including the
software product at issue, is in Maryland, and therefore transfer is appropriate. [DE-32 at 15-
16.] However, Plaintiff asserts that it, too, "possesses material documentary evidence in this
District" and that, in any event, the location of such evidence is unimportant because it is
electronic and easily transferable. [DE-49 at 21.] Defendant concedes that at least some of the
relevant information, stored on its servers in Maryland, is electronically transferable. [DE-32 at
16 ("assuming, *arguendo*, NextLOGiK possesses [Plaintiff's] proprietary information, all
information is stored on NextLOGiK's Maryland site server and can be electronically transmitted
to ACHC from the Maryland site."); 3-4 ("Software product-at-issue . . . stored on NextLOGiK
servers located in Baltimore, Maryland.").] Without more, the Court is unable to determine
which party has (and which district contains) relatively more material evidence and witnesses.
Further, much of the documentary evidence—including the software at issue and information
provided between the two parties—appears to be electronic and transferable. *See Abbot Grp.,
LLC v. Hobie Cat Co.*, No. 107CV156, 2007 WL 1853413, at *3 (W.D.N.C. June 26, 2007)
("[T]he court finds this factor to be neutral inasmuch as electronically stored data is just as
accessible in Asheville, North Carolina, as it would be in Oceanside, California."). The location
of evidence does not alter the balance in favor of transfer.

### 3. Interest of Justice

Defendant's most compelling argument is that because the contract at issue contains a Maryland choice-of-law provision, the case should be transferred to the District of Maryland, a court more familiar with the governing law. [DE-32 at 24.] The presence of a choice-of-law clause is, at most, a factor weighing in favor of transfer. *See Hunter*, 2016 WL 5415761, at \*11 ("A choice-of-law clause alone, however, is insufficient to justify a transfer of venue"). But, there is no reason this Court cannot apply Maryland contract law to the instant case. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 739 (E.D. Va. 2007) (holding, on a § 1404(a) motion to transfer, that even if state law of proposed transferee court applied to the dispute, "the interest of justice does not weigh in favor of transfer" because "[t]his court can familiarize itself with either Illinois or Iowa law, if it is required to do so. As previously stated by this court, '[t]he nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation.'" (citation omitted)). The presence of a choice-of-law provision weighs in favor of transfer.[4]

---

[4] Defendant makes a few additional arguments, none of which weigh in favor of transfer. For example, Defendant cites statistics showing that at the end of 2019 the time to disposition for civil cases in the District of Maryland was 1.2 months shorter than in the Eastern District of North Carolina and argues that the interest of justice would be served by a quicker resolution of this matter there. [DE-32 at 20.] But, more recent data, as of June 30, 2020, has shown a significant decrease in the difference between times to disposition in the district courts at issue— to 0.1 months. *See* United States Courts, Federal Court Management Statistics—Comparison Within Circuit (June 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2020.pdf. One court in our District recently denied an attempt to transfer a case citing docket congestion on the same basis. In *Bourne*, Judge Flanagan wrote: "As noted by plaintiff, the addition of a new colleague to the court's bench renders stale defendant's caseload statistics for this district. Defendant's suggestion that the court has not immediately benefitted from the presence of an additional district court judge is uninformed and unpersuasive." *See Bourne*, 2020 WL 1491549, at \*6. This Court agrees.

> 4. Defendant has Failed to Overcome the Presumption in Favor of
> Plaintiff's Choice of Forum

In sum, Plaintiff's choice of forum weighs in favor of retaining the matter in this District, the convenience and access of the witnesses and parties is neutral, and the presence of a choice-of-law provision weighs in favor of transfer. The ultimate question thus becomes whether the choice-of-law provision—favoring transfer—overcomes Plaintiff's choice of forum—favoring retention. In light of the strong presumption in favor of Plaintiff's choice of forum, it does not. *Cf. Hunter*, 2016 WL 5415761, at *11 ("Therefore, while the choice-of-law provisions may weigh in favor of Defendants' motion, this is insufficient to overcome the presumption in favor of Plaintiffs' choice of forum."); *Bourne*, 2020 WL 1491549, at *6-*7 (declining to transfer case and holding that "the potential application of California law weigh[s] in favor of transfer," but "alone" was "not sufficient to warrant relief."). The cases Defendant cites in support of its motion to transfer either involve a forum-selection clause, see e.g., *Generation Cos., LLC v. Holiday Hospitality Franchising, LLC*, No. 5:15-CV-220-FL, 2015 WL 7306448 (E.D.N.C. Nov. 19, 2015), or contain other factors weighing in favor of transfer, see, e.g., *Stokes v. Southeast Hotel Properties*, 877 F. Supp. 986 (W.D.N.C. 1994) (*inter alia*, plaintiff moved to transfer and sources of proof were in transferee district), neither of which is present here. As a practical matter, a choice-of-law provision is not a forum-selection provision, which is instead "given controlling weight in all but the most exceptional cases." *Vault, LLC v. Dell Inc.*, No. 1:18-CV-00633, 2019 WL 113726, at *3 (M.D.N.C. Jan. 4, 2019) (internal quotation marks omitted) (citing *Alt. Marine*, 571 U.S. at 59-60). Defendant did not bargain for a forum-selection clause, and the Court declines to enforce the choice-of-law provision as if it had.

IV.    Conclusion

For the foregoing reasons, the Motion [DE-31] is DENIED.

SO ORDERED, this the 20ᵗʰ day of August, 2020

_____

RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE